*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 32**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

JEREMY WILLIAMS BRIDGEWATERS,
*Appellant.*

No. 20180190
Heard September 18, 2019
Filed May 28, 2020

On Certification from the Court of Appeals

Third District, West Jordan
The Honorable William K. Kendall
Nos. 171402352 and 171403026

Attorneys:

Sim Gill, Samuel P. Sutton, Salt Lake City, for appellee

Samantha R. Dugan, Salt Lake City, for appellant

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PEARCE joined.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1 Jeremy Bridgewaters was charged with two separate instances of violating a protective order. After a preliminary hearing, the district court, acting as a magistrate, bound him over to stand trial. Bridgewaters moved to quash the bindover. He argued that he had not been properly served with the protective order he was accused of violating, and that a previously issued ex parte order had expired. The district court denied his motion.

Bridgewaters filed an interlocutory appeal, which the court of appeals certified to us.

¶2　The statute that criminalizes violation of a protective order (Violation Statute) requires the prosecution to prove that the defendant was "properly served" with the order at issue. UTAH CODE § 76-5-108(1) (2017).[1] While the Violation Statute does not define proper service, the Utah Cohabitant Abuse Act (Act or Cohabitant Abuse Act), *id.* §§ 78B-7-101 to -116 (2017),[2] under which the orders in this case were issued, contains certain specific procedural requirements that inform our analysis. We conclude that the Act requires a protective order to be served in accordance with rule 4 of the Utah Rules of Civil Procedure, even though a protective order does not initiate a civil protective order proceeding in the same way that a summons and complaint commence other civil actions. Because the protective order here was served pursuant to rule 5, it was not properly served.

¶3　However, as the district court correctly determined, the ex parte order was still in effect at the time of the events in question. Under the Act, once a court holds a hearing on a petition for a protective order and issues such an order, a previously issued ex parte order "remains in effect until service of process of the protective order is completed." *Id.* § 78B-7-107(1)(d) (2017).

¶4　Bridgewaters argues that even under such circumstances, Utah Code § 78B-7-107(1)(c) (2017) does not permit an ex parte order to remain in effect longer than 180 days. We disagree with his reading of the Act. Because the district court issued a protective order after a hearing, the "ex parte protective order remain[ed] in effect" until the protective order was served in accordance with the Act. *See id.* § 78B-7-107(1)(d) (2017).

---

[1] This statute was amended during the 2018 general session of the Utah Legislature. *See* 2018 Utah Laws 1564. We refer to the version of the statute in effect at the time of the alleged violations.

[2] As with the Violation Statute, portions of the Cohabitant Abuse Act have been amended. So we refer to the version of the statute in effect at the time of the alleged violations.

¶5   Accordingly, the magistrate properly bound over Bridgewaters to face both counts to the extent they are based on the ex parte order. We affirm.

## BACKGROUND[3]

¶6   On February 5, 2016, Bridgewaters' former girlfriend (T.T.) petitioned for a temporary protective order against him. The district court issued an ex parte protective order (ex parte order) that same day. The ex parte order prohibited Bridgewaters from communicating with T.T. other than during court mediation sessions, and from going to T.T.'s residence and workplace, among other things. Bridgewaters was personally served with a copy of the ex parte order the day it was issued. The order indicated that there would be a hearing on February 23, 2016, and it instructed Bridgewaters to "[g]o to the court hearing on the date listed [on the order]."

¶7   The district court held a hearing on the scheduled date. But Bridgewaters did not attend. Upon conclusion of the hearing, the court entered a protective order, dated February 23, 2016. Like the ex parte order, the protective order prohibited Bridgewaters from communicating in any way with T.T. other than during court mediation sessions and from going to T.T.'s residence and workplace.

¶8   The Cohabitant Abuse Act requires that "[f]ollowing the protective order hearing, the court shall . . . as soon as possible, deliver the order to the county sheriff for service of process." UTAH CODE § 78B-7-106(4)(a) (2017). But for reasons that do not appear in the record, the sheriff did not serve the protective order on Bridgewaters.

¶9   Eventually, on May 3, 2016, counsel for T.T. stepped in and filed a certificate of service, informing the court that counsel

_____

[3] When reviewing a bindover determination, we view the evidence in the light most favorable to the prosecution and resolve all inferences in favor of the prosecution. *See State v. Virgin*, 2006 UT 29, ¶ 24, 137 P.3d 787; *State v. Clark*, 2001 UT 9, ¶ 19, 20 P.3d 300 ("Viewed in the light most favorable to the prosecution, the facts presented at the preliminary hearing were sufficient to meet the reasonable belief standard.").

had mailed a true and correct copy of the protective order to Bridgewaters at his last known address. Notably, Bridgewaters' last known address was T.T.'s residence at the time she filed the protective order petition, and the ex parte order and protective order both prohibited him from being there.

¶10 On June 27, 2017, T.T. spotted Bridgewaters at her apartment complex. She and her adult daughter were returning home late that night when they saw Bridgewaters exiting the complex. Bridgewaters rolled down his car window and said that he "was driving through."[4]

¶11 The next day, Bridgewaters texted T.T. Although the text messages were from various unknown numbers, T.T. knew the text messages were from Bridgewaters because of "the way he addressed [her] . . . in them."

¶12 The State charged Bridgewaters with violating the ex parte order and the protective order in two separate criminal cases: one related to Bridgewaters' physical presence at T.T.'s apartment complex, and the other related to the text messages he had sent her the following day. After a preliminary hearing in which both cases were heard together, the magistrate bound Bridgewaters over to stand trial on both counts.

¶13 Bridgewaters moved to quash the bindover, arguing that the State had not presented evidence that he had been properly served with the protective order, and that the ex parte order had expired at the time of the alleged offenses because the Cohabitant Abuse Act prohibits an ex parte order from being extended beyond 180 days. The district court denied the motion. It looked to the language of the Act, which states that "[i]f at that hearing [on the ex parte order] the court issues a protective order, the ex parte protective order remains in effect until service of process of the protective order is completed." *Id.* § 78B-7-107(1)(d) (2017). The court rejected Bridgewaters' statutory interpretation and concluded that the ex parte order remained in effect.

---

[4] At a different point in the preliminary hearing, Bridgewaters' attorney asked T.T. if Bridgewaters had "told [her] he was just turning around," to which she responded, "Yeah." While this does not bear on the outcome, we include this information for the sake of accuracy and completeness.

¶14 Bridgewaters petitioned for permission to appeal from an interlocutory order, which the court of appeals granted. The court of appeals then consolidated the two cases for a single determination and certified the case to us to decide (1) "whether, pursuant to Utah Code section 78B-7-107, a properly served ex-parte protective order may extend beyond 180 days if a permanent protective order is subsequently issued but not properly served upon a respondent" and (2) "whether rule 4 of the Utah Rules of Civil Procedure governs proper service of protective orders, as provided in Utah Code section 76-5-108, or whether rule 5 governs."

¶15 We exercise jurisdiction under Utah Code section 78A-3-102(3)(b).

## STANDARD OF REVIEW

¶16 The two questions before us are whether the protective order was properly served as required by the Violation Statute, UTAH CODE § 76-5-108 (2017), and whether the ex parte order remained in effect under the Cohabitant Abuse Act, *id.* §§ 78B-7-101 to -116 (2017), on the dates of the alleged offenses. These are legal questions, which we review for correctness. *See Keystone Ins. Agency, LLC v. Inside Ins., LLC*, 2019 UT 20, ¶ 12, 445 P.3d 434 (reviewing interpretation of rules of civil procedure for correctness); *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 12, 267 P.3d 863 (reviewing questions of statutory interpretation for correctness).

## ANALYSIS

¶17 The State charged Bridgewaters with two counts of violating "*a protective order or ex parte protective order* issued to [him] under Utah Code 78B-7-1, [the] Cohabitant Abuse Act." (Emphasis added.) The Cohabitant Abuse Act defines an "ex parte protective order" as "an order issued without notice to the defendant in accordance with this chapter." UTAH CODE § 78B-7-102(6) (2017). It defines a "protective order" as "an order issued pursuant to this chapter subsequent to a hearing on the petition, of which the petitioner and respondent have been given notice in accordance with this chapter." *Id.* § 78B-7-102(10)(a) (2017).

¶18 The parties do not dispute that the Violation Statute requires the State to prove Bridgewaters was "properly served" with the orders he is alleged to have violated. *See id.* § 76-5-108(1) (2017). Bridgewaters contends that proper service means service

of process under rule 4 of the Utah Rules of Civil Procedure, which was not done here. And while he does not dispute that the ex parte order was properly served on him, he argues that it had expired by the time of the alleged offenses. He contends that the Cohabitant Abuse Act does not permit an ex parte order to remain in effect longer than 180 days from its issuance, regardless of the circumstances. *See id.* § 78B-7-107(1)(c) (2017).

¶19 We first analyze whether the protective order was properly served. Because we conclude it was not, we then determine whether the ex parte order remained in effect at the time of the alleged offense.

## I. SERVICE OF THE PROTECTIVE ORDER

¶20 Bridgewaters argues that the district court should have granted his motion to quash the bindover because the State did not produce evidence that he was properly served with the protective order he is charged with violating. We agree that the State was required to produce evidence of proper service, and that proper service in this context mandates service under rule 4. However, because this argument applies only to the protective order, not the ex parte order, our agreement with Bridgewaters here does not lead to a reversal of the magistrate's decision on the motion to quash.[5]

¶21 As a threshold matter, proper service is an element of the charged offense, and therefore the State was required to produce evidence that Bridgewaters was properly served. At a preliminary hearing, the State must "establish probable cause" by "produc[ing] evidence sufficient to support a reasonable belief that the defendant committed the charged crime." *State v. Virgin*, 2006 UT 29, ¶ 17, 137 P.3d 787. And proper service is an element of the crime charged here. The Violation Statute states that "[a]ny person who is the respondent or defendant subject to a protective order" or "ex parte protective order . . . who intentionally or knowingly violates that order *after having been properly served*, is guilty of a class A misdemeanor." UTAH CODE § 76-5-108(1) (2017) (emphasis added).

---

[5] Bridgewaters does not dispute that he was properly served with the ex parte order. So this section deals only with service of the protective order.

¶22 Bridgewaters argues that proper service in this context means service under rule 4 of the Utah Rules of Civil Procedure. Although this is a criminal case, which is generally governed by the procedural rules established in the Utah Rules of Criminal Procedure, the protective order Bridgewaters is charged with violating was issued in a civil proceeding under the Cohabitant Abuse Act. *See* UTAH CODE §§ 78B-7-101 to -116 (2017). When a plaintiff or petitioner commences a civil action, rule 4 generally governs how the plaintiff must serve the summons and complaint on the defendant. Rule 4 requires service upon the defendant personally; leaving the documents at the defendant's "dwelling house or usual place of abode with a person of suitable age and discretion who resides there"; delivery of the documents to an authorized agent; or sending the documents by mail or commercial courier service, "provided the defendant signs a document indicating receipt."[6] UTAH R. CIV. P. 4(d)(1)(A), (2)(A). If the plaintiff cannot locate the person to be served, or if the person is avoiding service, rule 4 allows the plaintiff to move to serve the defendant by some other means.[7] *Id.* 4(d)(5)(A).

¶23 The State counters that the Cohabitant Abuse Act does not require the protective order to be served in accordance with rule 4. It argues that the protective order was properly served when T.T.'s counsel mailed it to Bridgwaters' last known address in accordance with rule 5(b)(3)(C). Rule 5 governs the service of pleadings and papers after a civil action has been initiated.[8] The

---

[6] These methods of service apply unless the defendant is a "minor under 14 years old"; has been "judicially declared to be incapacitated, of unsound mind, or incapable of conducting the individual's own affairs"; or is "incarcerated or committed at a facility operated by the state or any of its political subdivisions." UTAH R. CIV. P. 4(d)(1)(B), (C), (D).

[7] Specifically, alternative methods of service may be available "[i]f the identity or whereabouts of the person to be served are unknown and cannot be ascertained through reasonable diligence, if service upon all of the individual parties is impracticable under the circumstances, or if there is good cause to believe that the person to be served is avoiding service." *Id.* 4(d)(5)(A).

[8] Rule 5 permits service of a paper upon a party's lawyer, or upon a party if he or she is unrepresented, through the following

(Continued . . .)

State reasons that rule 5 should have governed service of the protective order because the action had already commenced with the ex parte order, which had been personally served on Bridgewaters.

¶24 While the Violation Statute establishes that proper service is an element of the offense, the statute does not contain further guidance regarding what is meant by that phrase. So we turn to the civil Cohabitant Abuse Act, under which the underlying protective order was issued. Although the Utah Rules of Civil Procedure govern service of process, pleadings, and papers in civil cases, the Cohabitant Abuse Act sets forth some unique procedures that are specific to protective order proceedings, as described below. In light of this, the Act states, "Insofar as the provisions of this chapter are more specific than the Utah Rules of Civil Procedure, regarding protective orders, the provisions of this chapter govern."[9] UTAH CODE § 78B-7-106(12) (2017).

---

methods: emailing the paper to the email address provided by the person; mailing it to the person's last known address; handing it to the person; leaving it at the person's office with a person in charge, in a receptacle for deliveries, or in a conspicuous place; leaving it at the "person's dwelling house or usual place of abode with a person of suitable age and discretion who resides there;" or any other method agreed to by the parties. *Id.* 5(b)(3)(B)–(G).

[9] Article VIII, section 4 of the Utah Constitution requires this court to "adopt rules of procedure . . . to be used in the courts of the state." The legislature may amend those rules "upon a vote of two-thirds of all members of both houses of the Legislature." *See also Brown v. Cox*, 2017 UT 3, ¶ 17, 387 P.3d 1040. When the legislature enacts procedure, this provision contemplates that it must do so by amending our rules. Such an amendment "would need to contain a reference to the rule to be amended and a clear expression of the Legislature's intent to modify our rules." *Id.* ¶ 20.

While the Cohabitant Abuse Act contains unique procedural rules that purport to supersede the Utah Rules of Civil Procedure where applicable, *see* UTAH CODE § 78B-7-106(12) (2017), the legislature did not enact those procedural provisions in a joint resolution that amended the corresponding rule of civil procedure. The State has not challenged the constitutionality of

(Continued . . .)

¶25 Protective order petitions do not commence with a summons and complaint. *Compare id.* § 78B-7-105 (2017) (discussing forms for petitions and protective orders), *with* UTAH R. CIV. P. 3(a) (discussing commencement of a civil action by filing a complaint and serving a summons with a copy of the complaint). Rather, if a person files a petition for an order of protection, a court may immediately issue an ex parte protective order, without notice to the respondent or a hearing, "[i]f it appears from [the] petition . . . that domestic violence or abuse has occurred." UTAH CODE § 78B-7-106(1) (2017).

¶26 If the court issues an ex parte protective order, it must schedule a hearing on the petition within twenty days of the issuance of the ex parte order.[10] *Id.* § 78B-7-107(1)(a) (2017). If at the hearing the court does not issue a protective order, the ex parte order expires. *Id.* § 78B-7-107(1)(b) (2017). But if the court does issue a protective order and the respondent is not present at the hearing, "the ex parte protective order remains in effect until service of process of the protective order is completed." *Id.* § 78B-7-107(1)(d) (2017).

¶27 Relevant here, the Cohabitant Abuse Act specifies how a protective order issued after a hearing must be served. It states that "[f]ollowing the protective order hearing, the court shall . . .

---

the Act's procedural provisions, so we will not opine on that question. We note, however, the practical concern with the way in which section 78B-7-106(12) (2017) purports to take precedence over less specific rules. In protective order proceedings, litigants and courts are faced with two sets of procedural rules running on parallel tracks and are required to make judgment calls about which rule should apply in a given circumstance. Aside from any constitutional concerns, the legislature could increase clarity for the bar and the bench if it were to enact rule changes through joint resolutions that specifically amend the relevant rule of procedure.

[10] The court may extend the ex parte order beyond twenty days only if the petitioner is unable to attend the hearing, the respondent has not been served, the respondent has had the opportunity to present a defense at the hearing, the respondent requests that the ex parte order be extended, or exigent circumstances exist. *Id.* § 78B7-107(1)(b) (2017).

as soon as possible, deliver the order to the county sheriff for *service of process.*" *Id.* § 78B-7-106(4)(a) (2017) (emphasis added).

¶28   The Act's use of the phrase "service of process" indicates that the protective order must be served in accordance with rule 4. Most importantly, rule 4 explicitly governs service of process. *See* UTAH R. CIV. P. 4 (titled "Process"). We have explained that "[s]ervice of process implements the procedural due process requirement that a defendant be informed of pending legal action and be provided with an opportunity to defend against the action." *Carlson v. Bos*, 740 P.2d 1269, 1271 (Utah 1987). In this context, "process" means a "summons or writ, esp[ecially] to appear or respond in court." *Process*, BLACK'S LAW DICTIONARY (11th ed. 2019). And the phrase "service of process" is generally understood as service on a defendant of the documents that commence an action, pursuant to rule 4. *See Weber County v. Ogden Trece*, 2013 UT 62, ¶¶ 28, 45, 48, 64, 321 P.3d 1067.

¶29   In using the phrase "service of process," the legislature referenced the procedure codified in rule 4. Accordingly, we conclude that even though the protective order does not initiate a protective order proceeding in the same way a summons and complaint commence other civil actions, the legislature intended a protective order to be served as if it were "process." This implicates rule 4, not rule 5.[11]

---

[11] The State argues that it would be duplicative and unnecessary to require rule 4 service of the protective order where the ex parte order has already been personally served, as is the case here. But the language of the Act does not support that argument. It clearly states that a protective order issued after a hearing shall be delivered "to the county sheriff for service of process." *Id.* § 78B-7-106(4)(a) (2017). The State does not identify statutory language modifying this requirement where the defendant was personally served with a previous ex parte order. Further, such dual service would not necessarily be duplicative and unnecessary, because both the ex parte order and the protective order can give rise to criminal and civil liability in the event of a violation. *See id.* § 78B-7-106(5)(a) (2017). And a protective order can include certain additional restrictions not present in the ex parte order. *See id.* § 78B-7-106(2)–(3) (2017). In this way, a protective order is substantively different than other

(Continued . . .)

¶30　But unlike rule 4, which puts the onus of service on the plaintiff, the Cohabitant Abuse Act provides for rule 4 service by the sheriff. *See* UTAH CODE § 78B-7-106(4)(a) (2017). The Act directs the court to transmit the order to the sheriff "as soon as possible." *Id.* It then specifies that the sheriff must provide "expedited service" for orders for protection, and that once the order has been served, the sheriff must transmit verification of service of process to the statewide domestic violence network. *Id.* § 78B-7-106(8)(a) (2017).

¶31　Here, for reasons that do not appear in the record, these procedures were not completed. The sheriff did not serve Bridgewaters with the protective order. Instead, T.T.'s counsel mailed the protective order to Bridgewaters' last known address.

¶32　Bridgewaters argues that this does not constitute proper service under the Violation Statute because it does not satisfy the requirements of rule 4. We agree. Because the Cohabitant Abuse Act requires service of process pursuant to rule 4, mailing the protective order to Bridgewaters' last known address pursuant to rule 5 does not suffice.[12] Accordingly, the protective order was not

---

papers and pleadings that are typically served under rule 5. The State also raises a policy concern that a dual-service requirement could allow a defendant to avoid service of the protective order after being alerted to the proceeding by the ex parte order. We note that our reading of section 78B-7-107(1)(d) (2017), *infra* ¶¶ 33–40, alleviates this concern by holding that the ex parte order remains in effect until service of the protective order.

[12] In his briefing, Bridgewaters occasionally appears to equate rule 4 service of process with personal service. But as Bridgewaters acknowledges, rule 4 includes service short of personal service, such as service by certified mail, or by alternative means in certain circumstances. UTAH R. CIV. P. 4(d)(2), (d)(5). We are not presented here with the question of whether a particular method of service under rule 4 meets constitutional procedural due process requirements in this context. We hold only that the Act requires service of the protective order under rule 4.

properly served upon Bridgewaters as required by the Violation Statute.[13]

## II. TIMEFRAME OF THE EX PARTE ORDER

¶33  Because we have determined that the protective order was not served in accordance with the Act, subsection 107(1)(d) applies. It states that "[i]f at [the] hearing the court issues a protective order, the ex parte protective order remains in effect *until service of process of the protective order is completed.*" UTAH CODE § 78B-7-107(1)(d) (2017) (emphasis added). Based on this provision, the magistrate concluded that the ex parte order was still in effect. This was correct.[14]

¶34  Bridgewaters does not dispute that the ex parte order was properly served on him. However, he argues that another

_____

[13] We flag another issue highlighted by these circumstances. The Act specifies that a protective order is to be served by the sheriff (or another law enforcement agency if it has contact with the respondent and the agency determines it is in the best interests of the petitioner to do so). *See* UTAH CODE § 78B-7-106(8) (2017). Bridgewaters has not argued that the service here was improper because it was completed by counsel rather than the sheriff. However, it is arguable that the Cohabitant Abuse Act requires not only rule 4 service, but rule 4 service by the entities it specifies—the sheriff or another law enforcement agency. *See id.* § 78B-7-106(12) (2017) ("Insofar as the provisions of this chapter are more specific than the Utah Rules of Civil Procedure, regarding protective orders, the provisions of this chapter govern."). As Bridgewaters has not made this argument, we do not resolve it. However, we note the issue in the event that the legislature wishes to provide clarification.

[14] The State argues that because the magistrate based its bindover decision on subsection 107(1)(d), we should not reach the issue of whether the protective order was properly served, as we have done. *See supra* ¶¶ 20–32. But under the Cohabitant Abuse Act, the ex parte order remains in effect only if "service of process of the protective order" has not been "completed." So it is necessary to first determine whether the protective order has been served in a particular case to ascertain whether subsection 107(1)(d) is applicable.

provision of the Act limits the life of an ex parte order to 180 days, so it had expired by the time of the alleged violations. *See id.* § 78B-7-107(1)(c) (2017).

¶35   If a court issues an ex parte protective order, the Act requires the court to hold a hearing on the petition within twenty days. *Id.* § 78B-7-107(1)(a) (2017). "If at that hearing the court does not issue a protective order, the ex parte protective order shall expire, *unless it is otherwise extended by the court.*" *Id.* § 78B-7-107(1)(b) (2017) (emphasis added). The Act then specifies that a court may not extend an ex parte order beyond the twenty-day period unless:

(i)    the petitioner is unable to be present at the hearing;
(ii)   the respondent has not been served;
(iii)  the respondent has had the opportunity to present a defense at the hearing;
(iv)   the respondent requests that the ex parte order be extended; or
(v)    exigent circumstances exist.

*Id.* The next subsection states, "Under no circumstances may an ex parte order be extended beyond 180 days from the date of initial issuance." *Id.* § 78B-7-107(1)(c) (2017).

¶36   This is followed by subsection 107(1)(d), which states, "If at that hearing the court issues a protective order, the ex parte protective order remains in effect until service of process of the protective order is completed."

¶37   Bridgewaters argues that the language in subsection 107(1)(c) limits subsection 107(1)(d) and "shows a legislative intent for all ex parte protective orders issued pursuant to the Act to have a maximum effective life of 180 days." Because the alleged violations occurred more than 180 days after the ex parte order was issued, Bridgewaters contends the ex parte order cannot form the basis of the criminal charge against him. But this interpretation of the statute is incorrect.

¶38   We agree with the district court that the 180-day limit on extensions of an ex parte order in subsection 107(1)(c) modifies the circumstances listed in subsection 107(1)(b) under which a court may extend the ex parte order beyond twenty days. Both subsections 107(1)(b) and 107(1)(c) use iterations of the word "extend" (i.e., "extended" and "[e]xtensions"). *Id.* § 78B-7-

107(1)(b)–(c) (2017). This suggests that the two subsections should be read in conjunction with one another. Further, each of these subsections uses language suggestive of court action (i.e., "extended by the court" and "be extended"), *id.*, but subsection 107(1)(d) uses the more passive language of "remains in effect," *id.* § 78B-7-107(1)(d) (2017). Based on the language of these subsections, it is apparent that subsection 107(1)(c) works with subsection 107(1)(b) to prohibit a court from extending an ex parte order beyond 180 days.

¶39 But while the 180-day limit applies to a court's decision to extend an ex parte order before the court has held a hearing or before the court has issued a protective order, subsection 107(1)(d) applies when a court has held a hearing and has decided to issue a protective order. *See id.* ("If at that hearing the court issues a protective order . . . ."). In this circumstance, the Act permits the ex parte order to remain in effect until "service of process of the protective order is completed." *Id.* The 180-day time limit no longer applies.

¶40 Here, in the underlying civil protective order proceeding, the court issued an immediate ex parte order. Bridgewaters was personally served with the ex parte order, which notified him of the date of the hearing on the petition.[15] The court held the hearing and determined that a protective order was warranted. However, the protective order issued by the court was not served in accordance with the Act. Under these circumstances, the magistrate correctly concluded that the ex parte order

---

[15] We note that the ex parte order form contains potentially confusing language. It states, "This order lasts until the above hearing date; or later, if the court extends time for service." Although we flag this language to acknowledge its potential for confusion, we also note the immediately preceding sentences: "Go to the court hearing on the date listed below. If you do not go to the hearing, the judge can make orders without hearing your side." The order lists a hearing date and time, along with the commissioner's name and the address and specific location of the hearing. While these sentences alleviate potential confusion, we flag this language for possible refinement in light of this opinion. We also note that Bridgewaters has not raised any legal challenge in relation to this language.

remained in effect at the time of the alleged violations. However, we clarify that the charges against Bridgewaters may be based only on a violation of the ex parte order, not the protective order.[16]

## CONCLUSION

¶41    We conclude that the ex parte order remained in effect at the time of the alleged violations. Accordingly, to the extent that the charges against Bridgewaters are based on alleged violations of the ex parte order, we affirm.

────────────

────────────────────────────────────────

[16] After the ex parte order had been personally served on Bridgewaters, notifying him of its terms and a scheduled hearing on the underlying petition at which he could be heard, the ex parte order was technically not ex parte any longer. *See* UTAH CODE § 78B-7-102(6) (2017) (defining "ex parte protective order" as "an order issued *without notice* to the defendant" (emphasis added)). However, we refer to it as the "ex parte order" throughout this opinion to distinguish it from the protective order and to remain consistent with the terms used in the statute.