**2016 UT App 123**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
RYCHELLE MARY HAWKER,
Appellant.

Opinion
No. 20140473-CA
Filed June 3, 2016

Fourth District Court, Provo Department
The Honorable Fred D. Howard
No. 131400798

W. Andrew McCullough, Attorney for Appellant

Sean D. Reyes and Tera J. Peterson, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGE
J. FREDERIC VOROS JR. concurred in part and concurred in
the result, with opinion. JUDGE STEPHEN L. ROTH dissented,
with opinion.

ORME, Judge:

¶1 Appellant Rychelle Mary Hawker (Defendant) conditionally pled guilty to possession of a controlled substance, a third degree felony, and sexual solicitation, a class A misdemeanor. *See* Utah Code Ann. §§ 58-37-8, 76-10-1313 (LexisNexis 2012).[1] She conditioned her plea on the right to

---

1. Unless otherwise noted, throughout this opinion the version of the annotated Utah Code in effect at the time of the charged conduct is cited.

appeal a ruling by the district court, which concluded as a matter of law that the sexual solicitation statute proscribed the conduct at issue. Defendant now exercises that right of appeal, and we reverse.

BACKGROUND

¶2     A detective came across an internet advertisement for escort services that showed a "scantily dressed" woman "in seductive pos[es]." The detective called the number on the ad and spoke to Defendant, asking her to meet him at a motel. He also requested that Defendant wear a short skirt with no underwear and "perform with [a] sex toy" while he "watch[ed]." Defendant agreed to engage in the requested conduct for $250 for thirty minutes or $300 for one hour. She also asked that the caller "pitch in a little bit for gas money" and told him he could "tip for whatever it was worth" to him.

¶3     When Defendant arrived in the motel parking lot, the caller introduced himself, informed the Defendant that he was a detective, and arrested Defendant for agreeing to "masturbat[e] with a sex toy for money." The detective informed her that he was going to retrieve from her car the bag that purportedly contained the "toys" he had asked her to bring, and Defendant warned him that there were syringes in the car, including one "in the bag that was loaded with heroin." The detective retrieved the bag and later testified, "I found a sex toy . . . and then I found the syringe that was loaded which field tested positive for heroin."

¶4     Defendant was charged with possession of a controlled substance and sexual solicitation.[2] She briefed the district court

_____

2. Defendant was also charged with possession of drug paraphernalia, but that charge was dropped as part of Defendant's conditional plea agreement.

on the question of "whether the conduct at issue constituted a violation of the statute, as a matter of law." After briefing and oral argument, the district court interpreted Utah Code section 76-10-1313 to mean that "a person agreeing to masturbate so that another may watch, for pleasure and in exchange for money, is participating in a sexual activity with that person." Defendant subsequently entered "a conditional [guilty] plea with full right of appeal reserved. If sex solicitation is overturned, [the] State will move to dismiss [the] drug charge also." This appeal followed.

ISSUE AND STANDARD OF REVIEW

¶5      The only question decided in this opinion is whether Defendant's conduct violates the sexual solicitation statute, as a matter of law.[3] *See* Utah Code Ann. § 76-10-1313 (LexisNexis

---

3. Defendant also asks us to decide whether the district court's interpretation of the relevant statute implicates her "rights to due process of law" or violates her "right to free expression pursuant to the First Amendment." Defendant's specific argument is apparently that the sexual solicitation statute is unconstitutionally vague. There is a cogent vagueness challenge to section 76-10-1313 of the Utah Code, as there are two possible interpretations of the term "with" as used in the statute, as hereafter explained. *See* Utah Code Ann. § 76-10-1313(1)(a) (LexisNexis 2012). Indeed, the State's own argument on this point highlights this apparent vagueness. At oral argument, counsel for the State pointed this court to two possible definitions of the word. The first definition suggested is "one that shares in an action," and the second refers to mere "accompaniment or companionship." *Webster's Third New Int'l Dictionary* 2626 (1993). As explained later in the text, we reject the State's suggestion that for purposes of the solicitation statute, "with" could mean "to be together, in the same place," as a matter of statutory interpretation. Because we decide this case by

(continued…)

2012). "This is essentially an issue of statutory construction that we review for correctness, according no particular deference to the trial court." *State v. Mecham*, 2000 UT App 247, ¶ 20, 9 P.3d 777.

## ANALYSIS

¶6     Critical to our analysis is the text of two statutory provisions, section 76-10-1313, which outlines the elements of sexual solicitation, and section 76-10-1301, which defines "sexual activity." The first reads, in pertinent part, as follows:

> (1) A person is guilty of sexual solicitation when the person:
>
> (a) offers or agrees to commit any sexual activity with another person for a fee;
>
> (b) pays or offers or agrees to pay a fee to another person to commit any sexual activity; or
>
> (c) with intent to engage in sexual activity for a fee or to pay another person to commit any sexual activity for a fee engages in, offers or

---

(…continued)

employing standard statutory interpretation, we do not reach Defendant's constitutional challenges. "Generally, we avoid reaching constitutional issues if a case can be decided on other grounds." *I.M.L. v. State*, 2002 UT 110, ¶ 9 n.3, 61 P.3d 1038. Because in deciding this case it is unnecessary to resolve the constitutionality of the relevant statute, and because "unnecessary decisions are to be avoided," we do not reach Defendant's due process and First Amendment issues. *See Hoyle v. Monson*, 606 P.2d 240, 242 (Utah 1980).

> agrees to engage in, or requests or directs another to engage in any of the following acts:
>
> . . .
>
> (ii) masturbation . . . .

Utah Code Ann. § 76-10-1313 (LexisNexis 2012). The second provision reads, "'Sexual activity' means acts of masturbation, sexual intercourse, or any sexual act involving the genitals of one person and the mouth or anus of another person, regardless of the sex of either participant." *Id.* § 76-10-1301(4).

¶7     The State contends that Defendant violated section 76-10-1313(1)(a) because she agreed to commit sexual activity—masturbation—with the detective watching, for a fee. *See id.* § 76-10-1313(1)(a). The State argues that she also violated section 76-10-1313(1)(c) because, with intent to engage in sexual activity for a fee, she agreed to engage in masturbation. *See id.* § 76-10-1313(1)(c). For the reasons discussed below, Defendant did not violate either subsection.

## I. Subsection (1)(a)

¶8     We first consider the question of whether subsection (1)(a) criminalizes Defendant's behavior, which, in the words of the State, is the making of an "agreement to masturbate with a sex toy for a paying observer." In other words, did she agree "to commit any sexual activity *with* another person for a fee"? *See id.* § 76-10-1313(1)(a) (emphasis added). We carefully interpret criminal statutes that lie in the shadow of the First Amendment. *See, e.g., Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 526 (1991).

¶9     "When interpreting statutes, our primary goal is to evince the true intent and purpose of the Legislature." *State v. Watkins*, 2013 UT 28, ¶ 18, 309 P.3d 209 (citation and internal quotation marks omitted). This is not an undisciplined exercise in best guesses or mind reading; rather, "'[w]e first interpret the statute

according to its plain language.'" *Id.* (alteration in original) (quoting *Wilcox v. CSX Corp.*, 2003 UT 21, ¶ 8, 70 P.3d 85).

¶10     There can be no doubt that masturbation is sexual activity; indeed, the Utah Code is explicit on this point. *See* Utah Code Ann. § 76-10-1301(4) ("'Sexual activity' means acts of masturbation[.]"). And Defendant undisputedly agreed to masturbate for a fee. But the question is not simply whether Defendant agreed to engage in sexual activity for a fee. Instead, the question is whether she agreed to commit that sexual activity *with another person* for a fee. *See id.* § 76-10-1313(1)(a). The term "with" has two possible meanings in this context. It can connote "one that shares in an action," or it can mean "accompaniment or companionship." *Webster's Third New Int'l Dictionary* 2626 (1993). If the former definition applies, Defendant did not violate subsection (1)(a), because there was never an agreement that the detective would manipulate the toys or otherwise actively participate in the act of masturbation. But if the latter applies, the result is different because Defendant agreed to masturbate while in the detective's company.

¶11     To determine which variant of "with" this statute employs, it is appropriate to consider the other forms of sexual activity mentioned in the statute. "The several provisions of the statute should be construed together in the light of the general purpose and object of the act and so as to give effect to the main intent and purpose of the legislature as therein expressed." *Dunn v. Bryan*, 299 P. 253, 254–55 (Utah 1931) (citation and internal quotation marks omitted). Section 76-10-1301(4) contains a list of behaviors that, under section 76-10-1313(1)(a), may not lawfully be engaged in "with another person for a fee." *See* Utah Code Ann. §§ 76-10-1301(4), -1313(1)(a). These behaviors, "so used together and directed toward the same objective[,] . . . should be deemed to take character and meaning from each other." *See State v. Jones*, 407 P.2d 571, 573 (Utah 1965).

¶12     For an analogous situation, consider *State v. Serpente*, 768 P.2d 994 (Utah Ct. App. 1989), which construed our lewdness-

involving-a-child statute.[4] *Id.* at 995. *See* Utah Code Ann. § 76-9-702.5 (Michie Supp. 1988). In *Serpente*, a woman was convicted of lewdness involving a child after she went to her son's school, confronted a teacher, and, "[a]s she was leaving the room, . . . suddenly stopped at the door, raised the back of her dress at the teacher, and said, 'To you, sir!'" 768 P.2d at 995. Witnesses testified that while the woman "raise[d] her dress above her buttocks," they saw only a white garment and not her "naked bottom." *Id.* The applicable statute provided a list of acts constituting criminal behavior and then ended with, "'or performs any other act of gross lewdness.'" *Id.* at 996 (emphasis omitted) (quoting Utah Code Ann. § 76-9-702.5). We explained:

> The phrase "act of gross lewdness" is not subject to a plain meaning, but rather must derive its definition from the context in which it appears. To this end, we resort to the doctrine of *ejusdem generis.* This doctrine provides that "where general words follow the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general class as those enumerated."

*Serpente*, 768 P.2d at 997 (quoting *Black's Law Dictionary* 464 (5th ed. 1979)). We ultimately concluded that the statute's phrase "act of gross lewdness . . . refers to an act of equal magnitude of gravity as those acts specifically set forth in the statute, namely, the exposure of genitals or private parts, masturbation, or trespassory voyeurism." *Id.* (internal quotation marks omitted).

---

4. The court in *Serpente* construed a statute using the principle of *ejusdem generis*, which is not directly applicable here. *See State v. Serpente*, 768 P.2d 994, 997 (Utah Ct. App. 1989). Looking to *Serpente* is nevertheless helpful because it demonstrates the importance of construing together multiple terms contained in a single sentence. *See id.*

Concluding that Ms. Serpente's act was not on par with the enumerated ones, we reversed her conviction. *Id.*

¶13 Like the lewdness statute in *Serpente*, the sexual solicitation statute must be read to prohibit receiving or agreeing to receive payment for acts that are of the same sort, or "of equal magnitude." *See id.*; Utah Code Ann. §§ 76-10-1301(4),-1313(1)(a) (LexisNexis 2012). The list set forth in section 76-10-1301(4) includes sexual intercourse, which requires two people to be jointly engaged in the conduct, and sexual contact between "the genitals of one person and the mouth or anus of another person"—again, necessarily a two-person activity. Neither of these categories of conduct involves one person acting and another person watching. In other words, for these types of sexual activity to be prohibited under subsection (1)(a), "with" must mean that the other person is joining in the activity and not merely there as company or a very small audience.[5] Construing like terms together, "with" must mean the same when applied to masturbation. It is therefore not enough, under subsection (1)(a), that someone agrees to masturbate on her own for a fee while

---

5. In reaching this conclusion, it is also helpful to consider the interplay between subsection (1)(a), which includes the term "with," and subsection (1)(b), which does not. It seems apparent that the two subsections are meant to complement each other, in that subsection (1)(a) applies to the individual who is paid and subsection (1)(b) applies to the individual who pays. *Compare* Utah Code Ann. § 76-10-1313(a), *with id.* § 76-10-1313(1)(b). Both subsections require an offer to, or agreement with, another person. *Id.* § 76-10-1313(1)(a)–(b). Yet only subsection (1)(a) uses the term "with." This reveals that "with another person" applies to the performance of the sexual activity, because if the Legislature had intended for it to modify the offer or agreement, the term "with" would be in both subsection (1)(a) and subsection (1)(b), which it is not.

another person is present. Because this is precisely what Defendant agreed to do, her agreement did not violate section 76-10-1313(1)(a).[6]

## II. Subsection (1)(c)

¶14 The State also argues that Defendant's conduct violated subsection (1)(c) because, with the intent to engage in sexual activity for a fee, she agreed to masturbate. *See* Utah Code Ann. § 76-10-1313(1)(c)(ii). The State's argument, at first glance, appears to comport with the plain language of the statute. But

---

6. We note that few, if any, jurisdictions have considered the question of whether masturbation, which is considered sexual activity by statute, is sufficient to form the basis of a conviction for sexual solicitation when the activity is performed alone while others pay to watch. But at least one jurisdiction has addressed a similar question when "sexual activity" was not as explicitly defined by statute. In 1991, a Pennsylvania court considered whether "self-masturbation for hire with no physical contact between patron and performer constitutes prostitution." *Pennsylvania v. Bleigh*, 586 A.2d 450, 452 (Pa. Super. Ct. 1991). The court, "[h]aving examined the evolution of the term prostitution, and the cases interpreting it, [concluded] that self-masturbation for hire without any physical contact between performer and viewer is not the type of conduct intended to come within the purview of" the state's prostitution statute. *Id.* at 453. *See also* 63C Am. Jur. 2d *Prostitution* § 7 (2015) ("Nude modeling does not constitute prostitution, nor does prostitution include self-masturbation for hire without any physical contact between performer and viewer.") (footnotes omitted); 73 C.J.S. *Prostitution and Related Offenses* § 6 (2015) ("Self-masturbation for hire has been held not to constitute 'sexual activity' proscribed by the prostitution statute, on the ground that sexual activity requires the physical interaction of two or more people.").

such a reading of the statute would create an anomaly by criminalizing an intent to engage in noncriminal behavior.

¶15 Of course, "[w]hen faced with a question of statutory construction, we look first to the plain language of the statute." *World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 259 (Utah 1994). But "when we find ambiguity in the statute's plain language[,] we seek guidance from the legislative history and relevant policy considerations." *Id.* If the State's plain-language reading of the statute is employed, the conduct determined not to be criminal under subsection (1)(a)—namely, agreeing to self-masturbate for a fee—would nevertheless be sufficient to establish the requisite criminal intent for a violation of subsection (1)(c). *See supra* ¶ 13. This would make for an absurd result, and a "well-settled caveat to the plain meaning rule states that a court should not follow the literal language of a statute if its plain meaning works an absurd result." *Savage v. Utah Youth Vill.*, 2004 UT 102, ¶ 18, 104 P.3d 1242. *See also In re Z.C.*, 2007 UT 54, ¶ 5, 165 P.3d 1206 (concluding "that applying the statute to treat [a minor] as both a victim and a perpetrator of child sex abuse for the same act leads to an absurd result that was not intended by the legislature"). It is thus appropriate to "look beyond the statute to legislative history and public policy to ascertain the statute's intent." *Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶ 47, 164 P.3d 384.

¶16 Subsection (1)(c) did not exist until the statute was amended in 2011. *Compare* Utah Code Ann. § 76-10-1313(1) (LexisNexis 2008), *with id.* § 76-10-1313(1) (2012). Subsection (1)(c) was added because "prostitution ha[d] evolved greatly in Salt Lake City and throughout the state" and police would "have to prove that they are not police officers before . . . a prostitute is

willing to make an arrangement for an act."[7] The amendment was intended by its proponents to operate so that "masturbating, or asking someone else to do that, for the purpose of showing that they're a cop or that they're not a cop, and if in the whole context you have enough evidence to show that they're doing it to engage in prostitution, then that would be enough for solicitation."[8] In short, subsection (1)(c) was added to preclude prostitutes from asking prospective customers to expose themselves and masturbate. Apparently this is a highly effective test for distinguishing police officers from "johns" as on-duty law enforcement officers will not expose themselves and masturbate while serious patrons of prostitution are, reportedly, happy to do so.

¶17 The conduct at issue here is entirely unrelated to the purpose intended by the Legislature in enacting subsection (1)(c). Defendant did not ask the detective to engage in any activity, nor did he agree to do so in order for Defendant to ascertain whether he was in law enforcement. It is logical to

---

7. *Sexual Solicitation Amendments: Hearing on HB 121 Before the House Judiciary Standing Committee*, 59th Leg. Gen. Sess. (Utah Feb. 15, 2011), http://utahlegislature.granicus.com/MediaPlayer. php?clip_id=15138&meta_id=509072 [https://perma.cc/QVF5-ZHBY] (statement of Chris Burbank, Chief of Police of the Salt Lake City Police Department, during presentation of Rep. Jennifer Seelig).

8. *Sexual Solicitation Amendments: Hearing on HB 121 Before the House Judiciary Standing Committee*, 59th Leg. Gen. Sess. (Utah Feb. 15, 2011), http://utahlegislature.granicus.com/MediaPlayer. php?clip_id=15138&meta_id=509072 [https://perma.cc/QVF5-ZHBY] (statement of Paul Boyden, Associate Director of the Statewide Association of Prosecutors, during presentation of Rep. Jennifer Seelig).

conclude, then, that the Legislature did not intend for Defendant's conduct to be criminalized under subsection (1)(c).

¶18 This is further supported by the fact that subsection (1)(c) requires two separate acts that are sexual in nature. The first is the act that the individual *intends* to engage in—sexual activity for a fee—and the second is the act that the person "engages in, offers or agrees to engage in, or requests or directs another to engage in," which precipitates the intended act. *See* Utah Code Ann. § 76-10-1313(1)(c) (LexisNexis 2012). But the instant case features only a single act that Defendant both intended to engage in and had agreed to engage in—self-masturbation for a fee while her customer watched. It is clear, then, that the intent component of subsection (1)(c) is meant to be self-referential: If, with intent to engage in conduct that would violate either subsection (1)(a) or subsection (1)(b), an individual engages in the conduct outlined in subsection (1)(c), he or she is guilty of sexual solicitation, without needing to actually engage in the conduct proscribed by subsections (1)(a) and (1)(b). If, however, the person has no intention of violating either subsection (1)(a) or subsection (1)(b), he or she lacks the requisite intent to violate subsection (1)(c).

¶19 The conduct to which Defendant agreed did not violate subsection (1)(a), and it did not implicate subsection (1)(b). Thus, her intent to engage in that conduct did not violate subsection (1)(c).

CONCLUSION

¶20 While the State insists that "the Legislature has specifically said that masturbation is a prohibited sexual activity," it is only unlawful under section 76-10-1313(1)(a) when, for a fee, that activity is to be performed *with* another person. "With," in this context, requires active participation by two people. And this is not what Defendant agreed to. Her agreement with the detective to allow him to watch her

masturbate was not an agreement to engage in sexual activity *with* the detective under subsection (1)(a). Furthermore, because the agreement was not criminal, it cannot supply the criminal intent required to establish a violation of subsection (1)(c). Defendant's conduct is therefore not the sort proscribed by the sexual solicitation statute, and the district court's ruling on this point is reversed. The case is remanded for further proceedings consistent with Defendant's conditional plea agreement.

———————

VOROS, Judge (concurring in part and concurring in the result):

¶21    I concur in the result reached by the lead opinion. I also concur in the lead opinion except as to Part II. I agree that Utah Code section 76-10-1313(1)(c) does not proscribe Defendant's conduct, though I reach that conclusion by a slightly different route than the lead opinion takes. But ultimately I would reverse under the rule of lenity.

¶22    "Under our rules of statutory construction, we look first to the statute's plain language to determine its meaning." *Sindt v. Retirement Board*, 2007 UT 16, ¶ 8, 157 P.3d 797 (citation and internal quotation marks omitted). In addition, "[w]e read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *Li v. Enterprise Rent-A-Car Co. of Utah*, 2006 UT 80, ¶ 9, 150 P.3d 471 (alteration in original) (citation and internal quotation marks omitted). "Normally, where the language of a statute is clear and unambiguous, our analysis ends; our duty is to give effect to that plain meaning." *In re Z.C.*, 2007 UT 54, ¶ 11, 165 P.3d 1206. However, "'a court should not follow the literal language of a statute if its plain meaning works an absurd result.'" *Id.* (quoting *Savage v. Utah Youth Village*, 2004 UT 102, ¶ 18, 104 P.3d 1242). An absurd result is one "so absurd that the legislative body which authored the legislation could not have intended it." *Id.* ¶ 13. Finally, "[o]ne of the cardinal principles of statutory construction is that [we] will look to the

reason, spirit, and sense of the legislation, as indicated by the entire context and subject matter of the statute dealing with the subject." *In re Marriage of Gonzalez*, 2000 UT 28, ¶ 23, 1 P.3d 1074 (citation and internal quotation marks omitted).

¶23　Bearing these principles in mind, I read section 76-10-1313(1) as follows. Subsection (1)(a) addresses the situation where a person offers to engage in sexual activity with another for a fee. The forbidden acts all involve at least two people: sexual intercourse, any sexual act involving a specified body part of one person and a specified body part of another, and—as explained in the lead opinion—masturbation with another. *See* Utah Code Ann. §§ 76-10-1313(1)(a), -1301(4) (LexisNexis 2012).

¶24　Subsection (1)(c), by contrast, addresses the situation where a person *intends* to engage in sexual activity with another for a fee—that is, to violate subsection (1)(a)—but *offers* to engage only in a sexual display, i.e., exposure or touching one's own body, lewdness, or masturbation. This subsection seems designed to capture "wink wink" situations where the parties agree to lawful sexually oriented conduct with the mutual expectation of more. This reading of the statute effectuates the reason, spirit, and sense of the legislation.

¶25　While this reading makes sense of the statute, it departs from the literal statutory text. In the preceding paragraph, I stated that subsection (1)(c) addresses the situation where the person intends to engage in sexual activity *with another* for a fee, but in fact the subsection requires only that the person intend to engage in "sexual activity for a fee." *See id.* § 76-10-1313(1)(c). It does not require that the sexual activity be "with another."

¶26　I reject the literal reading of subsection (1)(c) because that reading yields a result so absurd our legislature could not have intended it: a person could commit sexual solicitation by offering to masturbate alone with the intent to masturbate alone for a fee—an act that would not even be a crime under subsection (1)(a). This makes no sense. The State argues that subsection

(1)(c) is designed to snare prostitutes who require their customers to self-masturbate "in order to ferret out undercover officers who cannot engage in sexual activity." But this explanation does not address the absurdity of a literal reading of the statute: to commit sexual solicitation under subsection (1)(a), a person must offer to engage in masturbation *with another* for a fee, but to commit sexual solicitation under subsection (1)(c), a person need only offer to perform a sexual display (a non-criminal act) with the intent to masturbate *alone* (also a non-criminal act) for a fee.

¶27 The dissent's reading of the statute suffers, in my view, from a similar weakness. To read subsections (1)(a) and (1)(b) as addressing reciprocal sides—payor and payee—of the sexual activity transaction, the dissent must read "with another person" into subsection (1)(b). Read literally, subsection (1)(b) (which omits "with another person") criminalizes the offer to pay someone to commit masturbation alone, although subsection (1)(a) (which includes "with another person") does not criminalize the acceptance of that offer—another (I believe) unintended result.

¶28 In sum, then, under what I consider the most reasonable reading of the statute, to commit sexual solicitation a person must either offer to engage in sexual activity with another for a fee or offer to engage in a sexual display with the intent to engage in sexual activity with another for a fee. Here, the evidence does not show that Defendant violated either variant of the statute. Without evidence that she offered to engage in sexual activity with another for a fee, she cannot be found guilty under subsection (1)(a). And without evidence that she intended to engage in sexual activity with another for a fee, she cannot be found guilty under subsection (1)(c).

¶29 I concede that even what I consider the most reasonable reading of the statute departs from a literal reading of its text; but so do the other possible readings. The statute cannot sensibly be read according to its plain language—every attempt to

rationalize it requires ignoring a phrase here or inserting one there. It is, in short, ambiguous.

¶30    Fortunately, we have a rule for that. "The rule of lenity requires that we interpret an ambiguous statute in favor of lenity toward the person charged with criminal wrongdoing." *State v. Rasabout*, 2015 UT 72, ¶ 22, 356 P.3d 1258 (citing *State v. Watkins*, 2013 UT 28, ¶ 38 n.3, 309 P.3d 209). That three judges of this court could read the same statute so differently suggests that the rule of lenity should apply here. On that ground, I would reverse.

———————

ROTH, Judge (dissenting):

¶31    I respectfully dissent.

¶32    The lead opinion concludes that criminalization of masturbation for pay is precluded under Utah Code subsection 76-10-1313(1)(a), but not subsection 1313(1)(b), because there is a "with" in subsection 1313(1)(a) that is absent in subsection 1313(1)(b). *Compare* Utah Code Ann. § 76-10-1313(1)(a) (LexisNexis 2012), *with id.* § 76-10-1313(1)(b). In my view, the lead opinion's interpretation unjustifiably focuses on an alternative meaning of the term "with" in subsection 1313(1)(a) and, in doing so, misconstrues the legislative intent evinced in the statute's plain meaning.

¶33    To begin with, it is difficult for me to find a basis in the simple statutory language for ascribing some sort of ambiguity to the word "with" in subsection 1313(1)(a) so as to limit the meaning of "masturbation" to exclude self-stimulation in that subsection. When we interpret statutes, we "presume that the legislature used each word advisedly and [we] give effect to each term according to its ordinary and accepted meaning." *Nelson v. Salt Lake County*, 905 P.2d 872, 875 (Utah 1995). "In determining the ordinary meaning of nontechnical terms of a statute, our 'starting point' is the dictionary." *State v. Canton*, 2013 UT 44, ¶ 13, 308 P.3d 517 (quoting *Hi-Country Prop. Rights*

*Group v. Emmer*, 2013 UT 33, ¶ 19, 304 P.3d 851). Further, we should not place "singular focus" on ordinary words but should consider their plain meaning "in light of their association with surrounding words and phrases and in harmony with other statutes in the same chapter." *See State v. MacGuire*, 2004 UT 4, ¶ 45, 84 P.3d 1171 (Parrish, J., concurring).

¶34    Sexual solicitation, as found in Utah Code section 76-10-1313, is just one section under the umbrella of "Prostitution" that the Legislature has designated as "offenses against public health, safety, welfare, and morals." *See generally* Utah Code Ann., tit. 76, ch. 10 (LexisNexis 2012). Utah Code section 76-10-1301 to section -1314 criminalizes commercial sex acts that fall under the definition of "sexual activity," which it defines as "acts of masturbation, sexual intercourse, or any sexual act involving the genitals of one person and the mouth or anus of another person, regardless of the sex of either participant." Utah Code Ann. § 76-10-1301(4) (LexisNexis 2012). There is no indication in the plain language of subsection 1301(4) that "masturbation" is—or may be—limited to acts involving two active participants; the statutory language simply prohibits "acts of masturbation." Nor is there any indication in subsection 1301(4) that "masturbation" is a technical term of art. Dictionary definitions of masturbation indicate that masturbatory acts may be done solo or with another active participant; in fact, solo masturbation usually appears as the first entry, suggesting that it is the most common use of the word. *See, e.g.*, *Masturbation*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/masturbation [https://perma.cc/2DSR-MLYM] (defining the term as "erotic stimulation especially of one's own genital organs"); *Masturbation*, Dictionary.com, http://www.dictionary.com/browse/masturbation?s=t [https://perma.cc/4X6C-C6JL] (including as the first definition, "the stimulation or manipulation of one's own genitals" and as the second, "the stimulation . . . of another's genitals").

¶35 Subsections 1313(1)(a) and 1313(1)(b) of the Utah Criminal Code regarding prostitution incorporate subsection 1301(4)'s definition of "sexual activity" by criminalizing conduct amounting to offering, paying, accepting payment, or agreeing to pay for "any sexual activity." Subsection 1313(1)(a) prohibits "offers or [agreements] to commit any sexual activity with another person for a fee"; subsection 1313(1)(b) prohibits "[payments] or offers or [agreements] to pay a fee to another person to commit any sexual activity." The fact that both subsection 1313(1)(a) and subsection 1313(1)(b) use the word "any" to precede "sexual activity" seems to suggest that no limitation on the terms defined in subsection 1301(4) should be inferred.

¶36 However, the lead opinion seems to do just that when it focuses on the word "with" in subsection 1313(1)(a), which it notes has two possible meanings—one that connotes active participation and one that connotes a more passive presence with another.[9] It then determines that "with" in subsection

---

9. My own survey of definitions of "with" comports with the lead opinion's recognition of possible definitions of "with"—it is commonly used to connote togetherness involving either active or inactive participation in an activity. Merriam-Webster defines "with" as "used to say that people or things are together in one place" or "used to say that two or more people or things are doing something together or are involved in something." *With*, Merriam-Webster.com, http://www.merriam-webster.com/ dictionary/with [https://perma.cc/5T7P-QYNF]. Dictionary.com provides seventeen definitions of "with." The first definition is "accompanied by; accompanying." *With*, Dictionary.com, http:// www.dictionary.com/browse/with?s=t [https://perma.cc/3DY4-XJWW]. Macmillan Dictionary's first definition of "with" is "if one person or thing is with another or does something with them, they are together or they do it together." *With*, MacmillanDictionary.com, http://www.macmillandictionary.
(continued…)

1313(1)(a) must connote only active participation, and it concludes that because only subsection 1313(1)(a) contains that word, the person *agreeing to commit* self-masturbation for a fee under subsection 1313(1)(a) has not committed criminal conduct while the person *who offers or agrees to pay for another to commit* the very same act has done so under subsection 1313(1)(b). But the lead opinion also notes in footnote 5 that the plain language of subsections 1313(1)(a) and 1313(1)(b) indicates a legislative intent that these subsections are "meant to complement each other," and the logic of that footnote seems to lead naturally to a conclusion that the Legislature intended to equally criminalize both sides of the coin of "sexual activity." In my view, each subsection addresses one side of the two-sided commercial transaction for sexual activity; in other words, the plain language of subsection 1313(1)(a) and subsection 1313(1)(b) seems to mandate prohibition of all conduct involving, on the one hand, a person offering or agreeing to be paid by another to commit "any sexual activity," and on the other, a person offering, paying, or agreeing to pay another to commit "any sexual activity." Indeed, both subsections include prepositional phrases that indicate another person must be involved in the transaction; subsection 1313(1)(a) includes the phrase "with another," while subsection 1313(1)(b) includes the phrase "to another." And in doing so, each subsection incorporates subsection 1301(4)'s definition of "sexual activity," a definition which by its plain terms places no limitation on the type of masturbation prohibited.

---

(…continued)

com/us/dictionary/american/with [https://perma.cc/5S7S-6YNR]. Cambridge Dictionary indicates that "with" connotes "together" as "used of people or things that are together or doing something together." *With*, Dictionary.Cambridge. org, http://dictionary.cambridge.org/us/dictionary/english/with [https://perma.cc/D37W-AN42].

¶37 Given this, there does not appear to me to be justification in the plain language of subsection 1313(1)(a) for parsing the meaning of "with" as closely as the lead opinion does. As noted in my first footnote, the ordinary dictionary meaning of "with" is commonly understood to involve *either* active or inactive companionship. The inclusion of "with" in subsection 1313(1)(a) indicates legislative intent that another person must be involved in the transaction for sexual activity, but there are no other words in that subsection further qualifying the extent of this other person's involvement; conceivably, a person could be prosecuted under subsection 1313(1)(a) merely for offering to commit "any sexual activity" with another person for a fee, even if the other person ultimately declines to agree or to pay. Similarly, the inclusion of "to another" in subsection 1313(1)(b) indicates legislative intent that another person must be involved in the transaction—the person must be paying, offering to pay, or agreeing to pay another person for sexual activity—but there are no further words to qualify the extent of the other person's involvement in that case, either. Thus, to complement and match each other regarding the extent of criminalized conduct, the ordinary meaning of both "with another" in subsection 1313(1)(a) and "to another" in subsection 1313(1)(b) would, in my view, allow for criminal prosecution of a person who offers or agrees to be paid to commit "any [acts of masturbation]" for a fee, including a solo performance. *Compare* Utah Code Ann. § 76-10-1301(4) (LexisNexis 2012), *with id.* § 76-10-1313(1)(a)–(b).

¶38 Furthermore, I am not convinced that the word "with" in subsection 1313(1)(a) necessarily refers to the *type* of sexual activity agreed to. The lead opinion states that the inclusion of "with" in subsection 1313(1)(a) "reveals that 'with another person' applies to the performance of the sexual activity." *See supra* ¶ 13 note 5. But by parsing the word "with" so narrowly, it seems to me that the lead opinion's interpretation places excessive focus on the *type* of sexual activity agreed to by the parties under subsections 1313(1)(a) and 1313(1)(b) rather than the *transaction* for the sexual activity by the parties—the very

conduct a sexual solicitation statute is designed to prohibit. As discussed above, it seems apparent that subsection 1313(1)(a)'s "with another person" and subsection 1313(1)(b)'s "to another person" are meant to require the presence of another person in the transaction, or attempted transaction, for sexual activity. But it is less clear to me that those same prepositional phrases— "with another" and "to another"—also carry and convey any restriction regarding the *type* of sexual activity that must be agreed to. The only word in both subsections that indicates a qualification on the type of sexual activity itself is the "any" that immediately precedes "sexual activity," which, to my mind, indicates that both subsections criminalize offers or agreements to commit for pay whichever of the sexual activities listed in subsection 1301(4) may be the subject of the transaction, without limitation as to how the activity is to be performed. *See* Utah Code Ann. § 76-10-1313(1)(a)–(b). Thus, because subsections 1313(1)(a) and 1313(1)(b) incorporate subsection 1301(4)'s definition of "sexual activity" without placing explicit limitations on that activity beyond the word "any," it seems to me that the most that can be said regarding the agreement for the *type* of sexual activity to be performed is that both subsections require that the offer, payment, or agreement for payment be for one of the acts explicitly described in subsection 1301(4). And as noted above, there is no plain language in subsection 1301(4) that would seem to limit masturbation to only the version involving two active participants.

¶39 Moreover, although the lead opinion states that it is construing the statute in light of its general purpose and object, *see supra* ¶ 11, the lead opinion's interpretation seems to contravene the overarching purpose of this statute. It is one of the "cardinal principles of statutory construction" that we choose an interpretation that most precisely aligns with "the reason, spirit, and sense of the legislation, as indicated by the entire context and subject matter of the statute dealing with the subject." *Miller v. State*, 2010 UT App 25, ¶ 12, 226 P.3d 743 (citation and internal quotation marks omitted). The various

sections in the Utah Criminal Code regarding prostitution are meant to criminalize (and thereby discourage) the wide range of commercial sexual activity—solicitation, patronization, aiding, exploitation, and prostitution itself, *see* Utah Code Ann. §§ 76-10-1301 to -1314 (LexisNexis 2012), all of which arguably demean its participants and present an insidious threat to the "health, safety, welfare, and morals" of society. It is difficult for me to see how paid-for masturbation that involves one actor being compensated for self-masturbating in the presence of another is less grave in terms of the overall objective of the statute than one actor being paid to actually masturbate the other; both versions generate the harm to the participants and our societal fabric that the statute seeks to prevent.[10] Likewise, it is hard to see how penalizing one party for paying for a sexual activity that the other party is not penalized for performing in exchange for that payment fulfills the statute's purpose. And in the context of the statute as a whole, finding and resolving the ambiguity of "with" in subsection 1313(1)(a) to limit the statute's reach in the case of the person offering or agreeing to commit sexual activity for a fee seems unjustified, when the alternative, ordinary meaning of "with" seems to better carry out the statute's purpose and policy.

¶40   Finally, I also question the logic in the lead opinion's statutory construction. The lead opinion limits the meaning of "masturbation" in subsection 1301(4) through the meaning of "with" in subsection 1313(1)(a); there seems to be no other logical explanation for the lead opinion's conclusion that

---

10. The Defendant also argued that the district court's interpretation of these subsections of the code—that self-masturbation is a "sexual activity" criminalized in both subsection 1313(1)(a) and subsection 1313(1)(c)—renders these subsections unconstitutionally vague and overbroad. Because the lead opinion carries the day, I do not address the Defendant's arguments on these points.

subsection 1313(1)(a) requires two active masturbation participants while subsection 1313(1)(b) does not. But although we do have canons of textual construction that suggest it is appropriate to determine the meaning of a statutory term by looking to other terms in a statute,[11] I am aware of no canon of construction that suggests it is appropriate to limit the meaning of a *specific* word in one subsection of a statute—"masturbation"—by a *general* word—indeed, a mere preposition—in another subsection of a statute. In this regard, the lead opinion's construction of subsections 1301(4) and 1313(1)(a) seems to distort the norms of textual construction where the general purpose is to elicit the Legislature's intent by determining the ordinary, common meaning of statutory language. *See State v. Miller*, 2008 UT 61, ¶ 18, 193 P.3d 92 ("Our rule of statutory interpretation requires us to give effect to the intent of the legislature in light of the purpose the statute was meant to achieve. The best evidence of the legislature's intent is the plain language of the statute itself. And [w]hen examining the statutory language, we assume the legislature used each term advisedly and in accordance with its ordinary meaning." (alteration in original) (citations and internal quotation marks omitted)); *see also Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 19, 248 P.3d 465 ("Canons of construction . . . are not formulaic, dispositive indicators of statutory meaning. They are merely tools that guide our construction of statutes in accordance with common, ordinary usage and understanding of language . . . ."). Certainly, the reasoning of the lead opinion does not explain how the inclusion of the word "with" in subsection 1313(1)(a)

---

11. *See, e.g.*, *In re Disconnection of Certain Territory from Highland City*, 668 P.2d 544, 548 (Utah 1983) ("Where general language . . . is used together with specific words . . . , familiar rules of construction (*noscitur a sociis*, 'it is known from its associates,' and *ejusdem generis*, 'of the same kind') require that the general words be restricted to a sense analogous to the specific words." (citations omitted)).

and its absence from subsection 1313(1)(b) leads to a conclusion that "masturbation" requires two active participants in one subsection and not the other when, as the lead opinion suggests, the other acts in subsection 1301(4) involve two active participants. If, as the lead opinion asserts, "masturbation" must be defined as an act where two people are actively participating because the other two activities listed in subsection 1301(4) are activities with two active participants, there seems to be no logical reason not to conclude that the "sexual activity" criminalized in subsection 1313(1)(b) is likewise limited to masturbation with two active participants. Thus, even if I were to assume that "with" is ambiguous, the lead opinion's statutory construction is troubling, in my view, because it does not apply the same limitation to subsection 1313(1)(b) that it applies to subsection 1313(1)(a). But as discussed, I believe such a limitation applies to neither.

¶41   In summary, legislators, like others who strive for precision in expression (judges, for example), often fall short of perfection, and the wording here could have been more clear. But I think that an approach that takes into account the statute as a whole and its overall goals is preferable to one that focuses more narrowly on a single word, as the lead opinion's seems to do. In this regard, I agree with the lead opinion that "[i]t seems apparent that the two subsections [1313(1)(a) and 1313(1)(b)] are meant to complement each other," *supra* ¶ 13 note 5, and I think those subsections are intended to accomplish that goal together by taking into account and criminalizing both sides of the sexual transaction equally. The plain language of subsection 1313(1)(b) encompasses the entire range of "sexual activity" described in subsection 1301(4), and the commonly understood meaning of the term "masturbation," when considered in that context, plainly appears to criminalize paying for another to masturbate herself. And if the Legislature had intended to exclude the most common definition of masturbation from subsection 1313(1)(a) but not from subsection 1313(1)(b), it seems to me that a more robust showing of intent would be required—something more

than merely employing the word "with," a word that would ordinarily encompass both solo and active-participation masturbation, in one subsection and not the other. Finally, there does not appear to be any meaningful policy basis for criminalizing payment for an act of self-masturbation under subsection 1313(1)(b) and not the act for which that payment is made under subsection 1313(1)(a); rather, the underlying purpose and policy of Utah Criminal Code sections 76-10-1301 to -1314 seem to support the opposite conclusion. For these reasons, I respectfully dissent.

——————